EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* CUSTODIO GAUTIER OLIVERAS, acusado y apelante.

*Número:* CR-69-131     *Resuelto:* 8 de junio de 1970

*Benigno Pacheco Tizol*, abogado del apelante; *Gilberto Gierbolini, Procurador General*, y *Jorge Ríos Torres, Procurador General Auxiliar*, abogados de El Pueblo.

PER CURIAM: El apelante, convicto del delito de violación técnica y condenado a sufrir la pena de dos a cuatro años de presidio, apunta que el tribunal sentenciador incidió (1) al instruir al jurado sobre la defensa de coartada y (2) al no instruir que de creer que la perjudicada no estaba en el sitio de los hechos sino en la escuela deberían absolver al apelante. También apunta que el veredicto es contrario a la prueba no habiendo la suficiente corroboración. No tiene razón.

La prueba de cargo consistió del testimonio de la perjudicada, una niña de 13 años en la fecha de los hechos a los efectos de que fue al apartamiento del apelante a eso de las dos de la tarde del 31 de enero de 1967, en busca de su hermana de 11 años enviada allí por su mamá a pedir prestado dos dólares al apelante habida cuenta de que la madre le lavaba la ropa a aquél; que el apelante consumó el acto sexual en su persona, en contra de su voluntad luego que la hermana salió a comprar un pote de leche a pedido

del apelante. Dicha hermana testificó que cuando regresó encontró al apelante encima de su hermana; que luego de gritarle que la dejara y tirarle con un vaso, él se apartó de ella; que el apelante "tenía el pipí fuera . . . lo tenía en eso. . . . El pipí. . . . Ahí." señalando a sus partes pudendas como las de la perjudicada; que el apelante las amenazó de darles palos o cortarlas si contaban lo sucedido a su mamá. La madre testificó que al notar que la perjudicada no había reglado al mes siguiente, la llevó a un médico y más tarde a otro; que a sugestión del segundo médico, quien encontró a la perjudicada embarazada, dio cuenta al fiscal de lo ocurrido; después notó que estaba "llenando" hasta que dio a luz en 16 de septiembre de 1967.

Se adujo la defensa de coartada. Una señora testificó que en la tarde de los alegados hechos el apelante fue a casa de ella, a solicitud de ella, a arreglarle una puerta y allí permaneció hasta las seis de la tarde, luego de haber sido tratado por la mañana en la Administración de Veteranos, en la Parada 8 de Santurce, por razón de una sinusitis; que de la Administración de los Veteranos fue directo a su casa. Una maestra de quinto grado de la Escuela Bolívar Pagán, contradiciendo el testimonio de la perjudicada, dijo que en la fecha de los hechos era maestra de dicha niña; que en esa fecha la vio en la escuela desde las doce hasta las cinco de la tarde; que conoció al apelante en el tribunal, no antes. La defensa no le preguntó sobre el récord de asistencia que llevaba y que aparentemente lo tenía cuando testificaba pues lo entregó al fiscal durante el curso de su contrainterrogatorio. Por lo tanto no aparece de la prueba admitida si a la perjudicada se le marcó presente o ausente del salón de clase de la referida escuela en la tarde del día de los hechos en el mencionado récord.

El veredicto de culpabilidad fue rendido por unanimidad, a los 35 minutos de haber quedado el caso sometido a la consideración del jurado.

■ 1.—No incidió el tribunal sentenciador en su instrucción sobre la coartada. La instrucción considerada en conjunto es correcta. Siguió casi a la letra la norma establecida en *Pueblo* v. *Moreu Pérez*, 96 D.P.R. 60, 64 (1968), al instruir al jurado que

". . . esto no quiere decir, *ni debe entenderse así, el que una persona acusada de delito público invoque la defensa de coartada venga el acusado obligado a probar, fuera de toda duda razonable, su defensa de coartada. El no tiene esa obligación. . . . Todo lo que tiene que hacer un acusado para entenderse que ha tenido éxito en el establecimiento de su defensa de coartada es levantar una duda razonable* en el ánimo del juzgador sobre si él estaba o no en el sitio en que se alega por el Estado que estaba y en el momento mismo de la comisión de los hechos." (Énfasis en el original.)

Más adelante el juez sentenciador instruyó correctamente al jurado que

". . . o si llegasen ustedes a la conclusión de que el acusado a la fecha y sitio en que se alega consumó esta relación sexual se encontraba en sitio distinto al que se le imputa haber estado y cometido el hecho y que, por tanto, no podía razonablemente estar en ese sitio y que, por tanto, no cometió el delito; o si tuviesen ustedes *duda razonable* y fundada sobre si efectivamente el acusado se encontraba o no en el sitio que él alegó se encontraba, o si se encontraba o no o tuviesen duda razonable en el sitio en que se le imputa a él haber cometido el delito, en cualquiera de esas circunstancias es el deber de ustedes devolver al Tribunal un veredicto declarando al acusado no culpable del delito de violación técnica." (Énfasis en el original.)

■ 2.—Al terminar el tribunal de hacer un resumen completo y correcto de la prueba y de instruir al jurado, la defensa dijo al tribunal:

"¿No cree, Su Señoría, digo, *esto es una pregunta*, que se le debió instruir que si la joven, por ejemplo, no estaba en el sitio donde decía la acusación en la fecha y a la hora que ella decía por estar en la escuela, si el jurado llega a esa . . . ." (Bastardillas nuestras.)

El tribunal contestó que "no puedo meterme en esas incursiones. Yo creo que ellos son los jueces de los hechos y los llamados a resolver si el que estaba o no en el sitio de los hechos es el acusado, que es el que invoca la coartada y eso lo dije."

La prueba de la ausencia de la perjudicada del lugar de los hechos iba dirigida a contradecir su testimonio sobre la ocurrencia de los hechos que motivaron la causa. Sobre este particular el juez sentenciador correctamente instruyó a los miembros del jurado que ". . . toca a ustedes dirimir todo conflicto en las pruebas, no solamente cuando se contradicen los testigos del fiscal con los testigos del acusado, de existir éstos, sí que asimismo cuando los testigos de una misma parte se contradicen unos con otros. Y en los casos en que las declaraciones de los testigos sean de tal manera contradictorias que no sea posible a ustedes armonizarlas, está dentro de sus facultades ustedes resolver cuáles testigos deben ser creídos y cuáles no."

3.—El apuntamiento basado en la ausencia de corroboración es inmeritorio. El testimonio de la hermana de la perjudicada previamente relacionado tendía a establecer la relación del apelante con la comisión del delito como lo requiere la Regla 154 de las de Procedimiento Criminal. Las contradicciones entre los testimonios de las dos hermanas y sus anteriores declaraciones con respecto a si fueron juntas o por separado al apartamiento del apelante y si la hermana de la perjudicada le tiró a éste con un vaso plástico o no cuando a su regreso al apartamiento encontró al apelante encima de la perjudicada, son contradicciones sobre extremos no esenciales. El jurado no venía obligado por tal motivo a descartar y no dar crédito al resto del testimonio de las referidas dos niñas. *Pueblo* v. *López Ramos*, 96 D.P.R. 699 (1968).

El testimonio de la madre de las niñas no se adujo como parte del *res gestae* ni como prueba de corroboración como

alega entender el apelante. Esta prueba más bien iba dirigida a completar el cuadro de los hechos en que se basaba la acusación, es decir, a explicar porqué las niñas concurrieron a la vivienda del apelante y las gestiones subsiguientes de la testigo, como madre de la perjudicada, con motivo del estado de embarazo de ésta.

*En vista de lo expuesto, se confirmará la sentencia dictada en este caso por el Tribunal Superior, Sala de San Juan, en 1ro. de octubre de 1968.*

El Señor Juez Presidente no intervino. El Juez Asociado Señor Dávila disiente sin opinión.